the Honorable the judges of the United States Court of Appeals for the Fourth Circuit. All right, we'll hear the case of Muhammad versus Fleming and uh Mr Corson will hear from you or whoever you designate. Thank you, Your Honor. I'm here to designate. Um, so, uh, just good morning, Judge Niemeyer, Judge Diaz and Judge Quattle bomb under local rule of 46 a. It's my pleasure to introduce the student council who will argue both the opening and the rebuttal. His name is Blake Davis. He is a three l here at the law school. He's editor in chief of our law review. Next in the fall, he heads to Tallahassee for two years to clerk for a district judge and then a circuit judge. And that's my only bad news in this introduction is it will be a judge in the 11th circuit and not this court. But other than that, we thank you very much for this opportunity. I'm gonna slide out of the way and turn it over to Blake Davis. Thank you. Thank you very much. We look forward to hearing from him. All right, Mr Davis, welcome to the Fourth Circuit. We'll hear from you. Good morning, Your Honor. Thank you. May it please the court. My name is Blake Davis and I represent the appellant Malcolm Muhammad under the federal magistrates act. A district court judge may only transfer jurisdiction over a dispositive motion to a magistrate judge upon the consent of all parties. Absent that consent, all that remains is for the magistrate to issue a report and recommendation and for an article three judge, a judge of the court to review it de novo. But neither of these two core procedural protections were implemented in Mr Muhammad's case. And thus, Mr Muhammad respectfully requests that this court reverse the district court's decision transferring jurisdiction over the motion for summary judgment to the magistrate judge for the following two reasons. First, because there was never simultaneous consent and because Mr Muhammad never consented to Magistrate Judge Sergeant's jurisdiction that there was not necessary consent under the statute for the transfer. And second, that regardless of the status of Mr Muhammad's consent, but the transfer was also improper because it was improper for the magistrate judge to review de novo her own report and recommendation when the act requires the review to be done by an article three judge, which is consistent with this court's precedent and other federal statutes shaping the contours of de novo review. So to turn directly to the first point, your honors under the text of 28 U. S. C. 6 36 C two. Um, even after a party has initially consented, they have the ability to thereafter withhold their consent, which is exactly what Mr Muhammad did here, consistent with the local rule adopted by the Western District of Virginia to impose a 15 day window under which he would have been able to, um, exercise jurisdiction of the magistrate if all parties had consented here. There were four different Miss Mr Davis. Could I, um, kind of get in it? Maybe this point and you know, there's there's briefing about, um, you know, the ability to withdraw consent and what standard would apply to that and what factors would apply to that. But I'm trying to figure out whether we actually have a situation where withdrawal is involved or whether, based on the notice that the district court provided, there's a 15 day opportunity for both sides to consent. And if both don't, that initial opportunity goes away. And then the court keeps issuing additional invitations. So does do we have to talk about withdrawal at all? Or we or are we in a situation where, um, you know, the defendant never consented within 15 days? So, um, you know, we're not. We're not even worried about withdrawal because there was net that the first and second notices expired. Judge Quattle bomb. That's exactly Mr Muhammad's intention is that under the Western District's rule, which was promulgated pursuant to Section C two of 6 36 C food. But the rule requires a 15 day window for all parties to consent. And after that window is lapsed, the consents that are given during that period expire, which was reflected in the notice that was provided from the Western District's clerk's office on the second consent form. It again instructed Mr Muhammad that he had the opportunity to consent if he chose to, but that he could also withhold consent and that there would be no adverse consequences from the decision to withhold consent. And when the Apple East did not consent in either of the first two windows, Mr Muhammad chose to not give his consent when the third window was initiated in September of 2000 and 18. And so that's where, under the Western District's rule, which was promulgated to protect the voluntariness of the party's consent, um, it would be sufficient even without discussing the let me ask you on this question a little bit. Um, this is a local rule and, um, does it address, uh, do you believe, uh, the consent by the defendant or the, uh, mutual consent by the parties? In other words, uh, I gather that the defendant timely consented. Uh, he signed a paper and sent it in twice. Um, but, uh, the government never consented. As a matter of fact, it was a late consent. Uh, uh, my question is, how is the local rule phrased? Does it, does it cover the need to have both parties signing the consent form or is it enough, uh, that the 15 days were satisfied by the defendant? Your honor, it does. Um, so here, um, Mr Mohammed was the plaintiff in the 1983 action. Excuse me. I've got it. You're right. He's a plaintiff in 1983, right? He consented, right? He did, your honor. And it was not enough under either the statute, which requires the consent of all parties or even just the local district courts. Notice in Western District requires that each party has to send in a separate form notifying their consent within that 15 day window. And when that window would close the first two times that required the clock to reset and Mr Mohammed to sending his consent again, which is also consistent with the text of Section C two, which says even after a party has made their initial decision, they thereafter can make the decision to withhold consent. Even if this court were to go beyond just the local rule imposed in the Western District, just the statutory text because Mr Mohammed withheld his consent before the after he notified the court that he would be withholding his consent. Um, there would never have been the sufficient of all parties to transfer the jurisdiction. Let me ask you if, uh, that's one way to approach it. That's a very, uh, gets against the process early on. In this case, it appeared to me that he withdrew his consent before there was a referral. Uh, there was, uh, no one else had reacted to the consent. Uh, the defendant had not reacted, and the court did not order the referral. Uh, a referral under under, um, 636 C requires a court order, doesn't it? A referral does require the court order, Your Honor, but it also requires the both consents. Yes, Your Honor. And, uh, and it seems to me that when we get to, uh, assessing whether, uh, a party can withdraw that consent before there's a referral, uh, the rule does not have any provision of good cause. The good cause provision in the rule only applies to withdrawal of a the cases that are being cited in the briefs, uh, seem to, uh, focus on the withdrawal of a reference, uh, which you need good cause for. But, uh, it seems to me it's an important distinction as to whether, uh, the person, uh, unilaterally made his consent timely, but there was no other acts and then there's no referral. He says, I want to take it back. Uh, and, uh, do we have case law that addresses that particular factual circumstance? The Fifth Circuit, I guess. Yeah. Uh, not directly in the Fifth Circuit, Your Honor. The Carter case was dealing with a situation where there had already been a referral and all parties had consented. The only case that's analogous, um, and a reported decision, the only one that's close to be the Gilmore v. Lockard decision, but it was dealing with where one party, just like Mr Mohammed, had withdrawn his consent before referral and the other side had never consented one way or the other until much later on in the process. Do you cite that as support for your position in this case? It's right. Your Honor, we do is the most analogous to our position. We would also say that, um, the this is a matter of the statutory text that we would, uh, while the Ninth Circuit applied an abusive discretion standard, we would say that he still had the right to withhold consent under Section C to the act that even after an initial decision had been made, he could thereafter withhold his consent, which is what, uh, as a matter of, uh, just a, of a legal error here, we would maintain that he did have the ability to withhold consent, which is what he did not until the housing became. Yeah, it's important, I gather, in the discussion of these issues is that, uh, courts make, uh, take care to distinguish between consent and a reference. And, uh, uh, a reference is a three-step process. It says, uh, one consenting party, uh, the opposing party consenting and the court issue in an order. That's a reference. Uh, but, uh, consent can merely be the conduct of one party. And your argument is that in this case, he can withdraw that consent without the necessity of showing good cause. Yes, Your Honor. And even more so that even beyond just the lack of consent here that when we look to the timing in which the Apple, he's my friends on the other side eventually tried to consent that that was almost two months after the magistrate judge had issued the report and recommendation in their favor. And as the Gilmore court said, um, there, there's a much lesser, uh, and footnote three of the opinion they talked about there not being any real issue of, um, just selection among judges, because at that point they knew exactly what the opinion would be. And then that was the type of situation that Gilmore court was trying to avoid. And we would ask the, this court to also follow that of a transfer once the report and recommendation had been done both on them as a matter of the consent issue, but also your honors to address the second point that mentioned in the brief. It was also improper for the magistrate judge to review DeNovo, assuming even if this court were defined against us on the consent prong in the alternative, it was still improper for the magistrate judge to review DeNovo her own important recommendation because the act makes clear that DeNovo review must occur by a separate entity from the magistrate judge. Well, it seems to me when she became the district judge de facto, uh, she didn't need a report and recommendation. Uh, she was the recommender and she's recommending to herself, uh, and the report and recommendation you could, she could, she could say, I agree with my own recommendation, but I think it would have been even cleaner and saying, I don't need a report and recommendation. I am the district judge now and I'm making the judgment. Uh, I'm making decision based on what I had recommended. I, I find difficult to see that there's any conflict there. She just, uh, the recommendation process is, uh, sort of voided or merged into her ruling because at that point the recommendation is a recommendation to herself and she knows what she's recommending and it's not a conflict where it's, it's not like her sitting on the district court and issuing a judgment and then coming up with a circuit court on special assessment and sitting on the review of that, deciding whether error was committed. Uh, the recommendations were what she believed was right and, uh, she didn't need to follow the recommendations. She's going to follow her own authority as a district judge, uh, to make the ruling. I, uh, I find your second argument a hard one to make, but, uh, I hear it. Yes, your honor. Well, and it is in the alternative because it with, as if Mr. Muhammad prevails in this court on the consent issue, then all that would remain at that point was for the report and recommendation to be, uh, landed back to the district court for a review. Mr. Davis, can I, uh, with respect to your first argument, um, if I'm understanding you correctly, it really doesn't matter why a party is, um, withdrawing consent or, uh, so long as the timing is, is within the, you know, so long as the other side hasn't agreed within the timeframe for, uh, for, for, uh, acquiescing to, uh, jurisdiction by a magistrate judge, whether the party's acting in good faith, bad faith or being indifferent, because there's some suggested in this record and the district court judge pointed this out, that the reason why the, uh, why your client was seeing withdraw consent was that he was unhappy with some of the earlier rulings of the magistrate judge. And the court seemed to think that that was unseemly, that he could withdraw consent on that basis, but under your view of things, it really doesn't matter why the party is, is withdrawing so long as it's done before the, uh, other side has consented and before the reference has actually been made. Is that right? No, yes, judge. Yeah, that, that is, I think, um, we have, I guess, a twofold response. One, just as a matter of that, our position is that it could be for any reason or no reason at all prior to the consent of all parties, that the cause standard would only be applicable once there had been, um, the consent of all parties in the referral process begun as in Carter, which is the distinguishing factor that the Ninth Circuit pointed out in Gilmore. But our second response there, your honor, would be that the Ninth Circuit went on to say that any, um, issues about profitable judge shopping, um, as my friends on the other side termed it in their brief, um, are lessened when only one party has consented because in this case, all parties knew the identities of the magistrate before choosing whether to consent or not consent in each of the 15 day windows. And Mr. Muhammad did not make his decision based on anything magistrate sergeant had done in this case. Um, he did express and as noted on, uh, page 498, I believe the joint appendix that he was, uh, on, didn't want to do magistrate judge sergeant because of rulings in a separate case. But even then that would have been permissible because it could have been for any other reason or no reason before the court, your honor, as long as there had not been the simultaneous consent of all parties. And thus, your honors, because there was not the simultaneous consent of all parties in this case, there was not the requisite consent of all parties needed for the transfer, um, to a magistrate judge. And moreover, your honors, and the alternative, we also maintained that because the section B1C requires a de novo review by an article three judge. If it, if there is going to be a de novo review, if that judge has the ability to transfer back to the original magistrate for additional backfinding, uh, Mr. Muhammad respectfully request this court reverse the decision of the district court, transferring the jurisdiction and remand for further proceedings. Thank you. All right. Thank you, Mr. Uh, Davis. Um, we'll now hear from Ms. Tashima. Good morning, your honors. And may it please the court. Rehini Tashima for the appellees. The issue on appeal is whether late judge Kaiser abused his discretion when he involuntary waiver of his article three adjudication, right? Purely because he disliked magistrate judge Sergeant judge Kaiser acted well within his discretion. When you get counsel, could you, I don't know if you're far away from your microphone or something, but I'm having a little trouble hearing you. And so if it's your earphones, maybe just speak up a tad. I would appreciate that. I'm sorry, your honor. Is this any better? That, that, that's a little better. It's still a little faint. I mean, I can hear it if that's all it does. Little thing is your microphone. I'm afraid so. Your honor. Um, I can try unplugging it and seeing if the computer might be better now, what you're doing now was better. So you, I don't know. Sounds great. Thank you. All right. I'm sorry, your honors. Um, and please let me just interrupt you. So we don't, uh, uh, use up too much of your time on things that, uh, we already understand. Uh, the question really in this case is whether the district court thought it had, uh, uh, it required good cause to withdraw the consent. Uh, and, uh, uh, it, it, it seems to me, uh, from a first blush and I'll hear from you, but the first blush is that the word consent and reference are being blurred. Even the fifth circuit case where there was a total reference, uh, talked about the consent. Uh, and in this case, uh, while the plaintiff did can sign his consent, uh, it did not have the effect of a reference. And only if you withdraw a reference, uh, do you need good cause, but the district court seemed to think, uh, uh, good cause was the standard. And, and because, because the plaintiff here didn't show good cause, uh, he couldn't withdraw his consent as opposed to his reference. Where did he get the good cause standard from? Your Honor, he did look to the fifth circuit's decision in Carter. Um, however, as a preliminary matter, the defendants would just like to clarify that despite Muhammad's contentions in his briefing, judge Kaiser did not subject him to extraordinary circumstances, which came out of C4. Uh, what he, uh, to the extent that Muhammad argues that he imported the standard from section C4, um, the C4 requires that to vacate a referral sous-responsive, the court must look to good cause. But if a party moves, it's extraordinary circumstances. Um, if judge Kaiser had imported the standard, he would have required extraordinary circumstances, but he did not to the extent he used the words good cause that he did cite the district's decision in Carter, but Carter explicitly stated afterwards determination of which is subject to the district court's discretion. Kaiser, Kaiser, there was a full reference and Kaiser, the holding was you could not withdraw that reference out good cause. And of course, that's the language of C4, but the, uh, but in its language in the fifth circuit, they loosely referred to that reference as consent, but the consent being discussed there was a full reference. Now the question is, uh, Gilmore seems to be more analogous because, uh, there had not been the reference there. Um, how do you, if I'm right about that, how, how do you explain that? Yes, your honor. Uh, to the extent that Carter did say good, uh, good cause all the cases that cited on just, um, analogize to other cases from the circuit that explicitly state that, uh, it is within the district court's discretion to determine whether or not to bronze a motion to withdraw waiver. Um, why should the district court have discretion at all? Because if somebody, if somebody sends in a consent form and then the very next day says I made a mistake, I withdraw it. You think the district court has authority to say, no, we've got you? Uh, yes, your honor. Because the right, where does that authority come from? From section 636, your honor, and how we treat waivers. The right to consent here is not the right is not the right to withhold consent. The right is the right to an article three adjudication. Well, let's make it more dramatic. We're in court and the plaintiff says, I consent. Uh, and then he says, oh, I meant to say, I do not consent in the same sentence. Are we going to hold them to that and have the court say, oh no, you said you're going to consent. Well, this is up to the district court's discretion, your honor. If it is purely the plaintiff misspoke, then perhaps it wasn't abusive discretion to not allow the plaintiff to withdraw that waiver. But once the party waves pretty steep hill there. Uh, well, your honor, once the party waves the right here, the, here, the right to article three adjudication, that waiver is locked in at the time of waiver. It is not contingent on anything else. Um, he purported, he purported to exercise a right, but he never did because the right depended on two more acts that is consent of the other party and a reference. And so the, uh, the party here is intending to initiate the process for a by giving his consent, but, uh, it never happened. And he would, he said, I'm changing my mind. I'm withdrawing my proposal of consent. And you're saying, uh, the court, uh, has discretion to say, no, you can't do that now you're stuck. Even though the court's never heard from the other side. Yes, your honor. It's because the waiver analysis is separate from the transfer analysis under section six through six. Parties have the ability to waive the rights article three adjudication independent of what other parties are doing. Each party individually makes this analysis and determines whether or not it wants to waive its right. It is only when all parties individually reach this decision that section six, three, six is transfer provision is triggered. Even under section six, three, six district courts aren't required to transfer cases to magistrate judges. Um, the parties can choose to waive their article three adjudication rights, but it is up to the district court's discretion, whether or not you agree the waiver, uh, that you're arguing for is the waiver of a constitutional right. Uh, the rights article three adjudication. Yes, your honor. Yeah. And so your suggestion is, uh, a party submits a waiver of a constitutional right, and then before anybody else reacts, he withdraws that waiver. And you're saying, uh, he's stuck with it unless the court, uh, uh, gives him discretion to do it. That's your argument. Yes, your honor. And this is consistent. We have a case that says that waving a constitutional right. I mean, he had a constitutional right to a jury trial, didn't he? Yes, your honor. All right. And you're saying he sent out a notice consenting to waive that right. And then before anybody did anything, he withdrew it. And you're saying he's now stuck with the waiver of a constitutional right because the court didn't approve it. Um, only if the court abuses discretion and judge Kaiser did not in this case, judge Kaiser saw that the face of the motion explained that the only reason relief was sought was because Mohammed did not like magistrate judge sergeant. It cannot be. Let me, let me, let me ask you that. I mean, yeah, I got, why is it, what's, what's wrong with a party deciding, you know, based on experience. Yeah. I may not, I question whether I'll get a good shake from this judge saying, Hey, I don't, I don't want to consent to that. I mean, yeah, it's presented as if it's automatically bad for a party to say, if I have a choice, you know, factoring in my experience with a judge is somehow improper. Well, yeah, that may, yeah. In an appellate sort of arena that may seem bad, but I mean, that happens every day, everywhere around this country. I I'm just having trouble seeing the sinister or, or even questionable aspect of deciding not to agree to something because they have questions about whether they'll come out yet is good with that judge versus someone else. Your honor. Um, because Mohammed had affirmatively waited right before it was assigned to magistrate judge sergeant, um, he did have to seek permission to call it back. Um, if he had chosen to, if he had recalculate, um, if he had not already waived that right, it would perhaps be a different decision because under section six, three, six, he can waive at any point. However, even if this court disagrees with judge Kaiser's decision that, um, he, um, he would not use his discretion to allow waiver on the ground, but he, of this, like a magistrate judge sergeant, it can't be an abusive discretion for a court to see that. Isn't it? It just seems, it seems somewhat, um, I don't know, somewhat ironic that, you know, the, the defendant, which never timely consented, um, and only consented after they get a, you know, favorable R and R is somehow arguing gotcha with the other party who, you know, one way of looking at it is they didn't consent at all to the operative notice. And another way is they may have consented, but they withdrew it well before anything happened. Um, anyway, I just, I mean, the facts here just are, you know, seem, seem to suggest the defendant quite frankly, is, is the one shopping more than, more than the plaintiff. Your honor, as a preliminary matter, this 15 day timeframe is not included in the actual local rules. It is a court request that is included on these notices and judges in the Western district frequently transfer cases after receiving, um, uh, waivers of these rights outside of the 15 day. These notices are even included on the Western district of Virginia's website for parties to fill out at their leisure at any point in time, 24 seven, and to submit to the clerk's office. Um, it was within judge Kaiser's discretion to decide one way or the other, whether or not he wanted to accept that waiver from the common world, excuse me, from the defendant at that time and go ahead and transfer the  Um, but this is up to judge Kaiser's discretion. If he had said no, it would not have been able to use his discretion in that instance either. Uh, the timing is somewhat atypical, but this does happen where a magistrate judge has already issued an RMR and then the parties go whenever. Let me ask you this, uh, in a civil process, uh, under the rules, uh, there is a specific rule that requires you to demand a jury trial and a plaintiff files a lawsuit and fails to demand a jury trial. And then two days later, uh, files an amended complaint that demands a jury trial. You need discretion of the court to do that. Yes. I believe it would depend on the timing, your honor, among whether the amended two days later, two days later, files a amended lawsuit demanding jury trial. I believe that would be fine. Your honor, because the amended complaint was, um, filed within the I think the jury trial waiver is triggered, um, based on the last meeting. Um, but even to the extent that if the parties are at it at the, at the level where they have all agreed to wait, but under your, under your jurisprudence, you would say when they filed that complaint, they waived the jury trial and the rule would say that unless you demand a jury trial, it's deemed wait now. So here, uh, the plaintiff, uh, filed a consent, waiving a jury trial, and then, uh, before anybody does anything, he withdraws that and said, I want a jury trial. No, your honor, because under section six, three, six, if there's no other indication of timing, it's not contingent on refiling and complain. Um, under section six, three, six, you have to write at any point before final adjudication. There are, there are fewer rules under six 36. The only rule is after a reference, you need court intervention with good cause. It says nothing about withdrawing a, uh, uh, consent from one party. Uh, it doesn't have a timing on it. It doesn't have a consequence. It doesn't say he sends in his consent and he's all abound by it. Uh, I, I, I don't know where, where the, uh, where you have a limiting principle to your argument about the waiver of constitutional rights. Within this context, your honor, it is up to the court's discretion, but 636 envisions this where it insists on where, where, where does the court get the discretion to deny him the right to, uh, change his mind before anybody else? What, what rule or what, what, what principle? It is within the case management, um, uh, district court's case management decisions. They are given a wide degree of latitude in these areas. And, um, judge Kaiser was well within his discretion when he saw Mohammed. What's your best case? Do you have a single case where somebody, a single case where somebody filed a consent and then withdrew the consent before, uh, the other party consented and before there was a reference? I believe Gilmore is the most analogous. Your honor, like Mohammed Gilmore goes against you, right? Well, no, your honor, because it says whether to grant a motion to withdraw is within, is a decision best left to the district court, uh, excuse me, a decision best left the district court's discretion. And in this instance, it was within judge Kaiser's discretion to consider the base of Mohammed's motion. A frequent litigator who he knows has appeared in this court 18 times and there was a magistrate system. Well, to look at his mission where it said that he disliked magistrate judge sergeant and conclude that it wouldn't be, um, and conclude that he would deny it, his motion on background. Um, even if this court disagrees, it can't be an abusive discretion for a judge to say that emotion that explicitly states dislike of a specific judge is not an appropriate reason to call back and knowing involuntary waiver, that can't be an abusive discretion. Um, and because judge Kaiser did not abuse discretion there, he, it was up to judge Kaiser to decide whether or not he wanted to transfer the case on with these facts in his transporter. A constitution gives a litigant the option to try a case before the court or before a jury, as long as it involves $20. I guess it is. I come into court and I see a judge who has no experience in antitrust cases. And so I demand a jury trial. I'd rather try my case to a jury than that judge or, or that judge has taken a strong position in antitrust cases. And that, that happens to be a real life example. There's been a huge debate when I was a lawyer as to whether you try antitrust cases before a jury or to the judge. So one of the sides would say, uh, these judges who have formed their opinions on antitrust law and the theories of economics and so forth, uh, they don't have to agree with it and they'd prefer to go to a jury. Now, is that pernicious? No, Your Honor, they haven't already waived their right to a jury trial. Um, I think the issue that comes down to here is Mohammed. Yeah, but you're saying the simple filing of a paper is a waiver, uh, uh, without, uh, any rule or basis to say it is a waiver. Uh, I mean, a waiver has to be a conscious knowing, uh, relinquishment of a right. And here, this man said, I want to, I'm happy to go with the magistrate judge. There are practical reasons for doing that. Uh, and then he sees who he gets and he said, no, I'm changing my mind and no one's done anything. And you're saying, uh, he's now bound, uh, by his initial paper, unless the judge authorizes him to do otherwise. That's your position, right? There's no contention that Mohammed's waiver was not knowing and not voluntary. Mohammed has gone through the system multiple times. He has had a previous case where the case was assigned to magistrate judge Palou first, and then subsequently transferred to magistrate judge Sargent. He knows this is a possibility. He made his calculation, decided when the case was still assigned to magistrate judge Palou that he would like magistrate judge Palou or any magistrate judge rather to hear his case, it was only after this case was reassigned to magistrate judge Sargent that he tried to pull back his waiver. His waiver was not with respect to magistrate judge Palou specifically hearing adjudicates in his claims. It was to any magistrate judge. Um, the mere fact that the case was, uh, excuse me, not transferred, but the case was reassigned to magistrate judge Sargent does not render his knowing and voluntary waiver somehow any less knowing or any less voluntary. There's no been no contention in the record to support that judge Kaiser was within his discretion to see this list in who he knows for a fact has gone through the system multiple times, has consented in other cases, the magistrate judge adjudication, and I've seen that his previous cases can be reassigned to different magistrate judges. It was not an abuse of discretion for judge Kaiser to look at that and see did judge Kaiser think he had to find good cause? I don't believe so. Your honor, he did cite the fifth circuit's decision, but the fifth circuit, um, was looking at a distinct situation, but made clear that this is a decision that's left to the district court's discretion. And that's exactly what judge Kaiser did. Um, it can't be an abuse of discretion for judge Kaiser to look at Muhammad saying, the only reason I want to call back my new involuntary waiver is because I don't like judge Sargent. It can't be an abuse of discretion for judge Kaiser not to agree with that. Um, can I ask a question about the notice? You, you, you made reference to the fact that this notice is a purely, you know, requirement for responding is something that's routinely ignored in the Western district of, uh, uh, Virginia. I, you know, first of all, I don't know that there's any evidence of that in the record. I mean, we typically take deadlines and notices pretty seriously. I mean, it says pretty clearly that if you desire to consent to this action, you have to indicate that by signing it within 15 days of the notice. And in this case, your clients did that, failed to do that, not just once, but I mean, why shouldn't we hold you to that? Your Honor, because the way the rights are to the adjudication is not on the timeline. Uh, the parties have the ability to, sure it is. It's the court has said it's on the timeline. It says right there, you got to consent within 15 days of the, the date of the notice. And if you don't, then that, and the ball game's over. And the fact that they kept sending out these notices and your client clients kept ignoring it. I mean, why should we ignore that? Because it's a, it's a court imposed request and the district court has discretion to request. Really? Yes, Your Honor. Also, this form is on the Western district's website for parties to fill out at any point. As a practical matter, the clerk of court will issue this automatically on multiple occasions. It goes to all parties and, um, it is within the court's discretion to decide even if it's coming in after 15 days, it is within the court's discretion to decide if it wants to. Did Judge Kaiser really, did Judge Kaiser address that issue? He didn't talk about that at all. Did he? Your Honor, he stated that he had reviewed the records, which necessarily includes this timeline. And this court takes judges out their word. And because Judge Kaiser did review the record before transferring, that includes this timeline. And he decided it was well within his discretion to go ahead and transfer the case on these facts. Let me ask you just one question as a follow-up to what I asked you earlier. I'm looking at Judge Kaiser's motion and he says motions to withdraw consent to trial before a magistrate judge may be granted only for good cause. And then he says Muhammad has made no such shown and therefore, uh, mere dissatisfaction with prior rulings alone is not sufficient to show good cause. Sounds to me like he thought he had to find good cause, didn't it? Your Honor, the subsequent phrase after that is determination of which is within the district court's discretion. District court, district courts make these decisions all the time at balancing factors such as I'm asking you what the decision in this case made by Judge Kaiser was, did he believe he had to, uh, there had to be a good, a showing of good cause. I don't believe so, Your Honor. So I should, we should ignore that statement in his opinion, his reasoning. He says motions to withdraw consent to trial before a magistrate judge may be granted only for good cause. And then he says, Muhammad has made no such showing. And then he explains, uh, that Muhammad's reason is not good cause. Now, do you think that you think he didn't rely on good cause or thought he had to when he says only for good cause, Your Honor, to the extent this court believes he applied a higher standard, even then it would be harmless error because under any standard, uh, attempting to claw back in knowing involuntary waiver purely because of dislike of the magistrate judge, um, it can't be an abuse of discretion to say no to that. Um, all right, if there are no further questions. Yeah, thank you very much. We'll hear from Mr, uh, Mr. Davis. Yes, Your Honor. Um, we're going to try to make it just a couple of brief points on, on rebuttal. And so I'd want to start, um, I think just where my friend on the other side left off about the local rule and the applicability of the 15 day window. Um, it is a requirement under the Western districts, uh, own practices, um, that it is a 15 day window. There's nowhere in the joint appendix of the record does it indicate that is a commonly ignored practice. And even if it were a commonly ignored practice to, to judge, uh, name Myers point earlier about the constitutional right to an Article three judge, if it was routinely ignored in the Western district, that would even make it more so heightened the importance of enforcing that window, which Congress in section, uh, C2 went on to say that or 636 C2, excuse me, went on to say that there would be rules adopted by the local courts to protect the voluntariness of the party's consent. And the advisory committee note to rule 73 of the federal rules of civil procedure, which guides the process of full consent as a baseline says that the local courts will primarily be adopting rules for voluntariness designed around the timelines upon which parties can consent, which is exactly what the Western district did here. But even, um, to answer judge Quattlebaum's question about the two different or his point about the two different prongs, even if this court were to not determine it on the basis of the 15 day window, the statutory language still says under section C2 that after they made their initial decision, but thereafter they can withhold consent. And so for that reason, Mr. Muhammad would still be able to have withheld his consent here because there was never simultaneous consent of parties. And, um, as judge, um, to answer judge numerous question about where the good cost standard applies, the good cost standard only applies under sections before once the referral has already been made here, there was no referral that was made because there was never the consent of all parties. And that's any good cost standard that was relied upon in, um, the district court judge Kaiser's opinion on page four 14 of the joint appendix, clearly where it was on the basis of good cause. Um, it would not be harmless error in this case, as my friend on the other side maintained, it would be a legal error and thus subject to reversal and remand on that ground as well, your honor. And thus, if there's no further questions, um, I'm happy to take any other questions the court has, but if not, we respectfully request the court reversion remand for the proceedings, uh, before an article three court. Thank you, Mr. Davis. Um, we would normally come down and greet counsel, uh, and especially, uh, uh, a student who's argued before us. Is this your first time in arguing under this, in the clinic? It is your honor in any court. Well, you're going, you're going down to the, uh, Florida for a while, but we hope you come back to the fourth circuit, argue some more, you've done a fine job. And thank you, Ms. Tashima, uh, for your argument. Uh, this has to be a substitute for our greeting to come down and shake hands, which is our normal practice. And, uh, so, uh, we look forward to seeing you both again. Uh, and, uh, uh, Ms. Tashima, you are in the fourth circuit, right? You're, uh, I am, sir. I'm with the attorney general's office. Yeah. Yeah. Yeah. So, uh, uh, we have you there and, uh, we'll bring Mr. Davis back and we can resume at another time. Anyway, Mr. Shima, Mr. Shima is actually where we want to be in Richmond, but, uh, I think, well, it's good to have you anyway. Uh, we'll proceed on to our next case.
judges: Paul V. Niemeyer, Albert Diaz, A. Marvin Quattlebaum Jr.